

RECEIVED
JUL 25 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
JUL 30 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

| | |
|---|---|
| JANE CAMPOS-CISNEROS, individually and in her capacity as the representative of the ESTATE OF JOSHUA DILLARD <br><br> Plaintiff <br><br> v. <br><br> BRAD LIVINGSTON, in his official capacity as Executive Director of the Texas Department of Criminal Justice, the TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFICER JANE DOE, in her individual capacity, OFFICER JOHN DOE, in his individual capacity, and JANET WHITE, R.N., in her individual capacity <br><br> Defendants | CIVIL ACTION NO. A07-CA-635-LY |

## COMPLAINT

Plaintiff Jane Campos-Cisneros respectfully files this complaint and would show:

### STATEMENT OF CLAIM

1. Plaintiff Jane Campos-Cisneros brings this civil rights action for injunctive, declaratory, and monetary relief, seeking redress from Defendants for the suicide death of her son, Joshua David Dillard, while he was incarcerated in the Texas Department of Criminal Justice's (TDCJ) John Connally Unit in Kenedy, Texas.

2. Plaintiff complains Defendants are liable for the deprivation of Mr. Dillard's constitutional rights under color of law and in violation of the Eighth Amendment to the United States Constitution, and for violations of his statutory rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

3. Plaintiff also brings supplemental actions under the Texas Wrongful Death Act and the Texas Survival Statute.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the ADA, and Section 504. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(a)(3)(4), and 2201 and the foregoing federal statutory and constitutional provisions.

5. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to consider her state law claims.

6. Venue is proper in this court under 28 U.S.C. § 1391(b)(1) as the events complained of occurred in this district and division.

## PARTIES

7. Plaintiff Jane Campos-Cisneros, adoptive mother of Mr. Dillard, sues in her individual capacity and as representative of his estate. Mr. Dillard died intestate at age 29, there were no probate proceedings arising from his death, and none are pending, as none are necessary. Mr. Dillard's sole heir is Ms. Campos-Cisneros. *See* Tex. Probate Code § 38(b)(1).

8. TDCJ is an agency of the State of Texas. It can be served with process by serving Brad Livingston, Executive Director for TDCJ, at 209 W. 14th Street, Austin, TX 78701.

9. At all relevant times, Defendant Brad Livingston was the Executive Director for TDCJ. As such, Livingston was the commanding officer of all TDCJ correctional officers, guards, and TDCJ employees and contractors, and was responsible for their training, supervision, and conduct. By law, he was responsible for ensuring that the custody, safekeeping, medical needs, and housing of all prisoners at the Connally Unit, including Mr. Dillard, were undertaken in compliance with the laws of the United States and Texas. At all relevant times, Livingston was acting under color of law and as the agent, and, as a matter of law, the official representative

2

of TDCJ. Livingston is sued in his official capacity for prospective injunctive and declaratory relief only. Livingston can be served with process at 209 W. 14th Street, Austin, TX 78701.

10. At all relevant times, Officer Jane Doe was a guard at the Connally Unit. She was an employee of TDCJ, was present while Mr. Dillard was in administrative segregation, and was charged with his safekeeping and care. At all relevant times, Jane Doe was acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. She is sued in her individual capacity for compensatory and punitive damages.[1]

11. At all relevant times, Officer John Doe was a guard at the Connally Unit. He was an employee of TDCJ, was present while Mr. Dillard was in administrative segregation, and was charged with his safekeeping and care. At all relevant times, John Doe was acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. He is sued in his individual capacity for compensatory and punitive damages.[2]

12. At all relevant times, Janet White was a nurse at the Connally Unit. She was an employee of the University of Texas Medical Branch ("UTMB"), which contracts with TDCJ to provide medical care to inmates, and was charged with clearing Mr. Dillard for administrative segregation. White was acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. She is sued in her individual capacity for compensatory and punitive damages.

---

[1] At this time, Plaintiff does not know the true name of Defendant Jane Doe. When Plaintiff learns Jane Doe's true name, she will amend the complaint to reflect Jane Doe's identity. Jane Doe is the officer assigned to supervise Mr. Dillard's cell block, and was responsible for his safety and well-being, at the time of his death.

[2] At this time, Plaintiff does not know the true name of Defendant John Doe. When Plaintiff learns John Doe's true name, she will amend the complaint to reflect John Doe's identity. John Doe is the

STATEMENT OF FACTS

13. Ms. Campos-Cisneros adopted Mr. Dillard in Dallas County in 1978, when he was 6 years old. Adoptive parents have the same rights as natural parents in Texas. *See* Texas Probate Code § 40.

14. Mr. Dillard had a long history of mental illness. He suffered from Attention Deficit/Hyperactivity Disorder (ADHD) as a child and was twice admitted to Shoal Creek Psychiatric Facility in Austin for depression and anger, for 45 days at the age of 15 and 60 days at the age of 16.

15. Mr. Dillard was first admitted to the custody of the State of Texas at age 17 in 1992. He spent most of his remaining life in custody.

16. Mr. Dillard's mental disturbances continued during his time in TDCJ's Connally Unit. He suffered an acute episode of mental illness in 2002 and TDCJ admitted him to its Montford Psychiatric Facility in Lubbock for approximately 5 months. During this episode Mr. Dillard told TDCJ and UTMB staff that he made 4 previous attempts to commit suicide.

17. TDCJ and UTMB staff at the Montford Facility evaluated Mr. Dillard as being at heightened long-term risk for suicide, especially during times of increased depression.

18. During his time at the Montford Facility, Mr. Dillard was diagnosed with a major depressive disorder, a psychotic disorder, polysubstance abuse, and antisocial personality disorder. He was additionally diagnosed with schizoaffective disorder in August of 2003.

19. Individuals suffering from major depressive disorder feel a profound and constant sense of hopelessness and despair and suffer from symptoms that interfere with their ability to work, study, sleep, eat and enjoy once pleasurable activities.

---

officer assigned to the picket to supervise Mr. Dillard's cell block, and was responsible for his safety and well-being at the time of his death.

4

20. Individuals suffering from a psychotic disorder suffer from hallucinations and delusions which can seriously affect their ability to think clearly, make good judgments, respond emotionally, communicate effectively, understand reality, and behave appropriately. These individuals often have difficulty staying in touch with reality and are often unable to meet the ordinary demands of daily life.

21. Individuals diagnosed with schizoaffective disorder suffer from a combination of symptoms of schizophrenia, a psychotic disorder, and either major depressive disorder or bipolar disorder. This disorder often results in severe changes in mood accompanied by psychotic symptoms such as hallucinations, delusions, and disorganized thinking which can affect the sufferer's ability to tell what is real from what is imagined.

22. Mr. Dillard was placed on several different medications for his mental illnesses, including Haloperidol (Haldol) and Fluoxetine (Prozac), during his incarceration. He continued to be prescribed these medications until the time of his death, but TDCJ and UTMB failed to provide him with them regularly.

23. On December 27, 2006, TDCJ placed Mr. Dillard in administrative segregation as a punishment for a violation of prison rules.

24. Inmates in administrative segregation are restricted to solitary cells for 23 hours a day, have restricted access to educational materials and personal property, and extremely limited contact with any other human beings. Administrative segregation is a profoundly depressing environment, and depressed inmates kill themselves when placed in administrative segregation.

25. Mr. Dillard was given a medical examination before being placed in segregation; medical personnel reported that he was suffering from no injuries or health complaints, but medical staff noted he was currently taking Haloperidol, a powerful antipsychotic medication. Janet White, R.N. cleared Mr. Dillard for placement in administrative segregation on December

27, 2006, despite knowledge of his previous suicide attempts, lengthy mental health history and current prescriptions for powerful antipsychotic medications.

26. While Mr. Dillard was confined to administrative segregation, Defendant Jane Doe was the guard on the hall and failed to perform her routine checks of the individuals in administrative segregation every 15 minutes as required by TDCJ policy. Defendant John Doe was assigned to the picket in Mr. Dillard's unit and failed to supervise Mr. Dillard in his cell in order to prevent him from harming himself, and failed to ensure Jane Doe completed her required cell checks.

27. On December 28, 2007, while Mr. Dillard was in administrative segregation, the inmates across the hall from him discovered he was no longer responding when they yelled at him. The other inmates began yelling for Defendant Jane Doe to check on Mr. Dillard in his cell. By the time she finally looked into Mr. Dillard's cell at 7:40p.m., she discovered him hanging from a sheet tied to the lamp fixture. He was also bleeding profusely from a deep wound in his left arm which he had made with a razor blade found in his cell.

28. Jane Doe failed to perform checks on Mr. Dillard in his cell in a manner sufficient to protect him from self-harm.

29. Jane Doe failed to remove dangerous items from Mr. Dillard's administrative segregation cell, including a razor blade and an item which could be fashioned into a ligature.

30. Medical personnel responded to Jane Doe's emergency call and found a very large quantity of coagulated blood on the bunk, floor and walls of Mr. Dillard's cell, indicating Mr. Dillard had been bleeding a substantial period of time.

31. The EMS report states, when the ambulance arrived to take him to the hospital at 8:02 p.m., Mr. Dillard's skin was blue and cool, indicating Mr. Dillard had hanged himself when Jane Doe failed to check his cell. He was pronounced dead at Otto Kaiser Hospital at 8:43 p.m.

32. The autopsy report indicates the cause of death was "asphyxia due to hanging," as a result of injuries Mr. Dillard sustained while housed in the Connally Unit.

33. There have been at least four (4) other deaths at the Connally Unit since 2002, including three (3) suicides.

34. Mr. Dillard's death was caused by the following actions and inaction of Defendants:

   a) Jane Doe and John Doe deliberately and indifferently failing to rescue Mr. Dillard immediately after other inmates reported he was trying to hang himself;

   b) TDCJ failing and refusing to provide a reasonable accommodation for Mr. Dillard's mental illness by failing and refusing to provide adequate staffing required for the proper level of care and supervision of potentially suicidal inmates, including Mr. Dillard;

   c) Jane Doe, John Doe, and TDCJ deliberately and indifferently failing and refusing to provide proper and adequate cell watches for inmates in their custody whom they know or suspect to be suicidal, including Mr. Dillard, a reasonable accommodation for a mentally ill inmate;

   d) Jane Doe, John Doe, and TDCJ deliberately and indifferently failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of inmates, including Mr. Dillard, in spite of having knowledge of his suicidal tendencies, a reasonable accommodation for a mentally ill inmate;

   e) Jane Doe, John Doe, and TDCJ deliberately and indifferently failing and refusing to remove dangerous items, such as razor blades and items that could be fashioned into ligatures, from suicidal inmates, including Mr. Dillard, a reasonable accommodation for a mentally ill inmate;

   f) Jane Doe, John Doe, and TDCJ deliberately and indifferently failing to observe Mr. Dillard frequently enough to prevent his suicide, a reasonable accommodation for a mentally ill inmate;

   g) TDCJ failing and refusing to comply with the ADA and Section 504, namely through their failure to reasonably accommodate inmates with mental disabilities, including Mr. Dillard, in their facilities, program activities, and services;

   h) TDCJ failing and refusing to comply with the ADA and Section 504 by not reasonably modifying their facilities, program activities, and services to accommodate inmates with mental disabilities, including Mr. Dillard; and,

   i) Janet White deliberately and indifferently failing to recognize any risk of suicide by Mr. Dillard during his medical screening prior to placement in administrative segregation.

## CAUSES OF ACTION

### I. Constitutional Violations

#### A. As to Defendant Officer Jane Doe

35. Defendant Jane Doe's actions, done under color of law and the authority of the State of Texas, intentionally and with deliberate indifference to Mr. Dillard's constitutional rights, deprived him of his Eighth Amendment right to protection against self harm while in custody, and caused his resulting death by:

   a) Failing to take adequate preventive measures, such as removing Mr. Dillard's razorblade while he was in administrative segregation and making the cell checks required by TDCJ policy, despite having knowledge of Mr. Dillard's severe mental illness and suicidal tendencies;

   b) Failing to adequately monitor Mr. Dillard in his cell to ensure that he was not engaging in self-harm, despite having knowledge of Mr. Dillard's severe mental illness and suicidal tendencies; and,

   c) Failing to prevent Mr. Dillard's suicide by rescuing him upon learning from other inmates he was attempting to hang himself.

36. These failures violated Mr. Dillard's right to protection against self harm while in custody, under the Eighth Amendment, through 42 U.S.C. § 1983.

37. Defendant Jane Doe was aware that Mr. Dillard suffered from severe mental illnesses and was taking antipsychotic medications when he was placed under her care in administrative segregation.

38. Defendant Jane Doe knew Mr. Dillard had a razor blade and sheet which could be fashioned into a ligature in his cell, demonstrating deliberate indifference to Mr. Dillard's right to protection from self harm.

39. Jane Doe failed to perform checks on Mr. Dillard adequate to ensure that he did not commit any acts of self harm, demonstrating deliberate indifference to Mr. Dillard's right to protection from self harm.

40. Jane Doe failed to respond to inmate calls to check Mr. Dillard's cell in a reasonable fashion, demonstrating deliberate indifference to his right to protection from self harm, allowing Mr. Dillard to asphyxiate and lose a substantial quantity of blood before medical intervention.

### B. As to Defendant John Doe

41. Defendant John Doe's actions, done under color of law and the authority of the State of Texas, intentionally and with deliberate indifference to Mr. Dillard's constitutional rights, deprived him of his Eighth Amendment right to protection against self harm while in custody, and caused his resulting death by failing to adequately monitor Mr. Dillard in his cell to ensure that he was not engaging in self harm.

42. This failure violated Mr. Dillard's right to protection against self harm while in custody, under the Eighth Amendment, through 42 U.S.C. § 1983.

43. John Doe was aware Mr. Dillard suffered from severe mental illnesses and was taking antipsychotic medications when he was placed under his care in administrative segregation.

44. John Doe was able to view all inmate cells from his station in the picket, but, with deliberate indifference, failed to monitor Mr. Dillard's cell.

45. John Doe failed to adequately check on Mr. Dillard to ensure that he did not commit any acts of self harm with deliberate indifference.

### C. As to Defendant Janet White

46. Defendant Janet White's actions, done under color of law and the authority of the State of Texas, intentionally and with deliberate indifference to Mr. Dillard's constitutional rights, deprived him of his Eight Amendment right to protection against self harm while in custody, and caused his resulting death deliberately and indifferently failing to recognize any risk of suicide by Mr. Dillard during his medical screening prior to placement in an extremely depressing environment, administrative segregation.

47. This failure violated Mr. Dillard's right to protection against self harm while in custody, under the Eighth Amendment, through 42 U.S.C. §1983.

48. White was aware Mr. Dillard had a long history of severe mental illness, including depressive and psychotic disorders, which are accurate predictors of suicide.

49. White was aware Mr. Dillard was currently taking antipsychotic medication at the time of his placement in administrative segregation.

50. White failed with deliberate indifference to reasonably recognize a risk for self harm and take adequate precautions to protect Mr. Dillard from any attempt at self harm.

### D. As to Defendant Brad Livingston

51. On information and belief, Brad Livingston, acting at the level of official policy and custom, with deliberate indifference to Mr. Dillard's constitutional rights, authorized, tolerated, and institutionalized the practices and conduct herein detailed, proximately causing the deprivation of Mr. Dillard's right to be free from self harm while in protective custody and his resulting death by:

   a) deliberately and indifferently failing to implement and execute policies requiring adequate preventative measures, such as removing Mr. Dillard's razor blade, despite TDCJ having knowledge of his mental illnesses and suicidal tendencies;

   b) deliberately and indifferently failing to provide frequent observations by staff assigned to cells that house suicidal inmates, including Mr. Dillard's cell;

   c) deliberately and indifferently failing to train staff to identify and protect mentally ill inmates, such as Mr. Dillard; and,

   d) deliberately and indifferently failing to adequately treat mental illnesses of inmates such as Mr. Dillard;

   e) deliberately and indifferently failing to adequately screen potentially suicidal inmates before placing them in administrative segregation; and,

   f) deliberately and indifferently failing to provide adequate protection and medical treatment to inmates suffering from mental illnesses while in administrative segregation.

52. These failures violated Mr. Dillard's Eighth Amendment right to protection against self harm while in protective custody, under 42 U.S.C. §1983.

## II. Title II of the ADA and Section 504 of the Rehabilitation Act
(As to Defendant Texas Department of Criminal Justice)

53. TDCJ has been, and is, a recipient of federal funds, and thus covered under the mandate of Section 504. Section 504 requires recipients of federal monies reasonably accommodate persons with mental disabilities in their facilities, program activities, and services and reasonably modify such facilities, services, and programs to accomplish this purpose.

54. Further, Title II of the ADA applies to TDCJ. Title II has essentially the same mandate as Section 504.

55. The Connally Unit of TDCJ is a facility, and its operation comprises a program and service, for Section 504 and ADA purposes.

56. For purposes of the ADA and Section 504, Mr. Dillard was a qualified individual having a mental impairment that substantially limited one or more major life activities.

57. Mr. Dillard had been diagnosed with several different mental disorders, including:

    a) major depressive disorder;

    b) psychotic disorder;

    c) polysubstance abuse; and,

    d) schizoaffective disorder.

58. Defendant Doe, an agent of TDCJ, perceived Mr. Dillard as "mentally ill," but intentionally discriminated against him by failing to confiscate his razorblade and failing and refusing to monitor his cell regularly while he was in administrative segregation.

59. TDCJ failed and refused to reasonably accommodate Mr. Dillard's mental disabilities (depression, psychosis, and schizoaffective disorder), in violation of the ADA and Section 504, when he was in the Connally Unit. That failure and refusal caused his death.

60. TDCJ refused to modify its facilities, services, and programs to reasonably accommodate Mr. Dillard's mental disability in violation of the ADA and Section 504 by:

   a) failing to provide adequate monitoring of his cell;

   b) failing to place him in a cell where continuous visual observation was possible;

   c) failing to provide adequate training for its staff on recognizing mental illness and working with mentally ill inmates;

   d) failing to provide adequate psychiatric screening of inmates prior to placing them in administrative segregation; and,

   e) failing to provide adequate training for its staff on responding to medical emergencies involving suicidal inmates.

61. A direct result of Defendant's intentional discrimination against Mr. Dillard was his death. Plaintiffs are entitled to the maximum amount of compensatory damages allowed by law.

### III. Texas Wrongful Death Act

62. Plaintiff seeks damages against Defendants Jane Doe, John Doe, Janet White, and TDCJ under the Texas Wrongful Death Act (Tex. Civ. Prac. & Rem. Code § 71.002), for losses including pain, suffering, and mental anguish sustained by her as a result of Mr. Dillard's death. The Wrongful Death Act allows for surviving family members to recover damages for the loss of a loved one where their loved one's death was the result of another individual's wrongful act. Ms. Campos-Cisneros is entitled to recover the maximum amount of damages allowed by law.

### IV. Texas Survival Statute

63. Plaintiff seeks damages against Defendants under the Texas Survival Statute (Tex.Civ.Prac.&Rem. Code § 71.021), for losses, including pain, suffering, and mental anguish sustained prior to Mr. Dillard's death due to asphyxiation by hanging. She is entitled to recover the maximum amount of damages allowed by law.

## DECLARATORY JUDGMENT

64. Plaintiff is entitled to declaratory judgment concerning Defendants' above described actions and their legal responsibilities with regard to suicidal inmates in TDCJ custody.

## INJUNCTIVE RELIEF

65. Plaintiff seeks injunctive relief, permanently enjoining TDCJ, its employees, agents, servants, successors-in-office, and all those acting in concert with it, from:

a) failing and refusing to provide adequate staffing required for the proper level of care of potentially suicidal inmates;

b) failing and refusing to provide proper and adequate cell watches for inmates in their custody whom they know or suspect to be suicidal;

c) failing and refusing to take adequate preventative measures upon discovery of suicidal tendencies of inmates;

d) failing and refusing to provide monitoring equipment for cells that house potentially suicidal inmates;

e) failing and refusing to provide adequate training for employees on recognizing and accommodating mentally ill and suicidal inmates;

f) failing and refusing to comply with the ADA and Section 504, namely through its failure to reasonably accommodate inmates with mental disabilities in its facilities, program activities, and services; and,

g) failing and refusing to comply with the ADA and Section 504 by not reasonably modifying its facilities, program activities, and services to accommodate inmates with mental disabilities.

## ATTORNEYS' FEES AND COSTS

66. Pursuant to 42 U.S.C. § 1988, and 42 U.S.C. § 12205, Plaintiff is entitled to recover attorneys' fees and costs.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff requests that the Court:

A. Award compensatory damages against Defendants Jane Doe, John Doe, Janet White, and TDCJ under the Survival Statute, Wrongful Death Act and pursuant to federal law, namely 42 U.S.C. §1983, the ADA and Section 504 as appropriate;

13

B. Award punitive damages against Defendant Jane Doe, John Doe, and Janet White under 42 U.S.C. §1983, pursuant to the Survival Statute and Wrongful Death Act;

C. Grant declaratory and injunctive relief, as set out in this Complaint;

D. Find Plaintiff is the prevailing party in this case and award her attorneys' fees, court costs, and litigation expenses; and,

E. Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

Dated: July 25, 2007

Respectfully Submitted,

Scott Medlock
Texas Bar No. 24044783
Ernest Saadiq Morris
Wash. Bar No. 32201
Wayne Krause
Texas Bar No. 24032644
James C. Harrington
Texas Bar No. 09048500

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
   (512) 474-5073 (phone)
   (512) 474-0726 (fax)

ATTORNEYS FOR PLAINTIFF